**SO ORDERED.**

**SIGNED this 28 day of November, 2006.**

_____
**A. Thomas Small**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| CHARLES FRANKLIN DUNCAN, III<br>KOREA GAIL DUNCAN | 05-02013-5-ATS |
| DEBTORS | |
| DAVID M. WARREN, TRUSTEE | ADVERSARY PROCEEDING NO. |
| Plaintiff | S-06-00025-5-AP |
| v. | |
| CHARLES FRANKLIN DUNCAN, III<br>and KOREA GAIL DUNCAN | |
| Defendants. | |

MEMORANDUM OPINION

The trial of this adversary proceeding brought by David M. Warren, chapter 7 trustee in the case of Charles Franklin Duncan, III and Korea Gail Duncan, to deny the debtors' discharges pursuant to 11 U.S.C. § 727(a)(2), and to avoid and recover fraudulent transfers pursuant to

11 U.S.C. §§ 548(a)(1)(A) and 550, was held in Raleigh, North Carolina on October 19, 2006.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.  This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(H) and (J), which this court may hear and determine.

Charles Franklin Duncan, III and Korea Gail Duncan filed a petition for relief under chapter 7 of the Bankruptcy Code on May 16, 2005, and David M. Warren was appointed trustee.

Mr. and Mrs. Duncan's financial troubles began in 2003 when they relocated from Boone, North Carolina, to Raleigh, and had difficulty selling their residence.  The house in Boone eventually was sold at a loss in April 2004, but prior to that time managing two mortgages created a financial strain.  Adding to the debtors' financial problems was Mr. Duncan's employer's inability to pay him all he was owed.  At some point Mr. Duncan was given a truck and trailer in partial payment of the amount due from his Boone employer.

Mr. and Mrs. Duncan sought the advice of bankruptcy counsel in November 2003, but managed to put off filing for bankruptcy and to keep their bills relatively current until early 2005.  By February 2005 several of their debts were in default, and with the increased interest

rates on their defaulted obligations, they were unable to satisfy their debts.  In early March 2005 they again went to see a bankruptcy attorney.

Also in March 2005, Mr. Duncan sold for $29,000 the truck and trailer that had been given to him by his employer.  After consulting their attorney, Mr. Duncan used part of the sale proceeds to pay off a loan that had been made from, and was secured by, his retirement account with AIG Valic.  Mr. Duncan borrowed $50,000 from his retirement account in December 2002 and had made regular payments on the loan.  The amount he paid in March 2005 to satisfy the loan was $14,001.92.

At the same time Mr. Duncan was paying his loan, some of the proceeds from the sale of his truck were used to satisfy two loans that Mrs. Duncan borrowed from, and which were secured by, her retirement account with AIG Valic.  Mrs. Duncan borrowed $3,200 from her retirement account in June 2001 and $6,837.31 in February 2003.  The amount she paid in March 2005 to satisfy the loans was $5,476.30.  Mrs. Duncan also used $3,000 from the proceeds of the sale of Mr. Duncan's truck and trailer to open a new Individual Retirement Account (IRA) on March 31, 2005 with Wachovia Bank.

Additionally, after consulting with bankruptcy counsel and being fully aware of the debtors' financial problems, Mr. Duncan sustained at least $4,500 in gambling losses.  He acknowledges that he gambled in

3

casinos and lost $2,000 in February 2005 in Las Vegas, $2,000 in March 2005 in Cincinnati, and $500 in April 2005 in St. Louis.

The trustee contends that Mr. Duncan's discharge should be denied pursuant to § 727(a)(2)(A) because of his payment of $14,001.92 to satisfy the loan against his retirement account and because of his gambling losses of $4,500.  The trustee also contends that Mrs. Duncan's discharge should be denied because of her payment of $5,476.30 to satisfy the loans against her retirement account and because of her opening of the $3,000 IRA.

Additionally, the trustee contends that pursuant to § 548(a)(1)(A) and § 550 he can avoid and recover from the debtors all of the loan repayments, Mrs. Duncan's IRA, and Mr. Duncan's gambling losses.

<u>Denial of Discharge Under § 727(a)(2)(A)</u>

An individual chapter 7 debtor's discharge will be denied under § 727(a)(2)(A) if

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>     (A) property of the debtor, within one year before the
>       date of the filing of the petition . . . .

11 U.S.C. § 727(a)(2)(A).

Avoidance and Recovery of Transfers Under §§ 548(a)(1)(A) and 550

A trustee may avoid any transfer of an interest of the debtor in property that was made or incurred within one year before the date of filing of the bankruptcy petition if the debtor

> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

11 U.S.C. § 548(a)(1)(A).

The avoided transfer may be recovered from the "initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1).  See In re King, S-06-00039-5-AP (Bankr. E.D.N.C. June 27, 2006).

The Debtors' Loan Repayments and the Opening of the IRA

According to the trustee, the Duncans knew of their poor financial condition and had made the decision to file for bankruptcy relief when they paid the loans and when the IRA was opened.  The trustee contends that the debtors were attempting to convert nonexempt property (Mr. Duncan's proceeds of $29,000 from the sale of his truck and trailer) to property that is exempt (retirement accounts).

The debtors concede that they discussed the loan repayments with their bankruptcy counsel before the payments were made, but contend that the payments were part of their overall retirement planning.  The debtors' testimony is credible that they always intended to repay the

5

loans as quickly as possible.  Mr. Duncan is 60 years old and the retirement accounts are of considerable importance to the debtors.  The effect of the transfers may have been to convert nonexempt assets to assets that would be exempt in bankruptcy, but the amounts are not excessive and the transfers are consistent with the debtors' legitimate attempts to provide for their retirement.

The court finds that the loan repayments were not made with actual intent to hinder, delay, or defraud any entity to which the debtors were or became indebted.  The court makes the same finding with respect to the opening of the $3,000 IRA by Mrs. Duncan.

Gambling Losses by Mr. Duncan

The trustee argues that when Mr. Duncan incurred his gambling losses he was well aware of his financial problems and knew that bankruptcy was inevitable.

Mr. Duncan testified that at the time he lost $2,000 in February, he believed that his debts were under control.  Furthermore, he justified the gambling losses as part of the cost of a vacation trip to Las Vegas to celebrate his birthday.  According to Mr. Duncan, because the airline tickets for the trip were obtained by using frequent flyer miles and his hotel room was complimentary, the $2,000 gambling loss taken in the context of the overall birthday celebration is not excessive. He also contends that never intended to lose any money, on

the contrary, he intended to win and to use his winnings to pay his creditors.

The court does not find Mr. Duncan's explanation to be credible. The court finds that in February 2005, he knew that several of his debts were in default and that his financial problems were severe. No matter how his vacation trip was paid for, he should not have gambled to the extent that he did. Furthermore, when he lost $2,000 in March 2005, and $500 in April, he certainly knew that his bankruptcy petition was inevitable.

The court is also not persuaded by Mr. Duncan's contention that he never intended to lose money. Most who gamble in casinos are equally optimistic, but unless the gambler is a professional gambler, the reality is that the odds favor the casinos.

The court finds that Mr. Duncan's gambling losses were incurred by him with the intent to hinder, delay or defraud his creditors, and that the gambling losses are transfers for his benefit. The court also finds that Mrs. Duncan had no fraudulent intent with respect to the gambling losses and was not a transferee nor a beneficiary of the gambling transfer.

Based on the foregoing, the court concludes that Mrs. Duncan's discharge should not be denied, that the trustee may not recover from her the loan repayments she made with respect to her retirement, that the trustee may not recover from her the $3,000 she used to establish

a new IRA account, and that the trustee may not recover from her the transfers arising from Mr. Duncan's gambling losses.

The court also concludes that Mr. Duncan's discharge should be denied pursuant to § 727(a)(1)(A) and that the trustee may avoid and recover from him pursuant to § 548(a)(1)(A) and § 550(a)(1) the gambling debts totaling $4,500 that he incurred within a year prior to his bankruptcy.

A separate judgment will be entered.

**END OF DOCUMENT**